Joseph H. Williams *et al.*, Plaintiffs in Error, *v.* Joseph Tatnall *et al.*, Defendants in Error.

ERROR TO PIATT.

A judgment which is junior to an unrecorded mortgage, has not a lien which will cut off the mortgage, if the creditor had notice of its existence.

Notice to an attorney is notice to his client; for the law presumes that he communicated that notice to his client.

The twenty-second section of the statute, entitled Judgments and Executions, providing for the execution of a deed to a redeeming judgment creditor, is repugnant to the remaining provisions of that law, and is entirely inoperative.

The cases of *Sweezy* v. *Chandler*, 11 Ill. 445, and *McLagan* v. *Brown*, ibid. 519, are held erroneous so far as they are based on the twenty-second section of the act entitled Judgments and Executions.

This bill, filed by Joseph, Edward and William Tatnall, against John Gatewood, James H. Hays, and Joseph H. Williams, alleges, that on June 4, 1856, complainants, by their agent, Outten, sold and conveyed to Gatewood, Section 11,

Township 17, Range 4, for $6,400; one-third in hand paid, and two notes given for balance, intended to have been made payable to complainants, June 4, 1857, and 1858, each for $2,133.33⅓, with interest, but, by mistake, made payable June 1, to the order of Outten, as agent of Edward Tatnall. Same date, Gatewood executed a mortgage on the land, to complainants, to secure notes intended to be for the above sums, but by mistake, described as $2,132.33⅓ each. Mortgage, acknowledged June 17, 1856, before H. C. McComas, a notary public of Piatt county, was then delivered to Outten, as agent of complainants, and recorded January 19, 1859. Said notes are wholly unpaid.

That they are informed and believe, that on 14th September, 1858, Hays obtained judgment in Piatt Circuit Court, against Gatewood and one Peyton, for $3,047.22 and costs; execution was issued to the sheriff of Piatt, and levied on said land, which on March 3, 1860, was sold by virtue of said execution to Hays for the amount of judgment, interest and costs, and returned satisfied.

That they are informed and believe, that Williams, on December 29, 1859, after the recording of the mortgage, recovered a judgment against Gatewood, in Piatt Circuit Court, for $1,292.85 and costs; that execution issued thereon, and, on March 5, 1861, by direction of Williams, was levied on the same land; that Williams then paid to the sheriff $3,388.78, the amount for which it was sold to Hays, with ten per cent. interest from sale to that date, for the use of Hays; the sheriff, on receiving the money, filed in the recorder's office, a certificate of redemption, as prescribed by law; that, on May 7, 1861, the sheriff offered the land for sale, when Williams bid $5,246.62, being the aggregate amount of his own judgment, interest and costs, and the amount paid to redeem from Hays' judgment, he, Williams, being the only bidder; and that, on the 15th of July, 1861, the sheriff executed a deed to Williams, and that he claims some interest in the land, acquired since the recording of the mortgage.

That Hays, before the commencement of his suit against Gatewood, in which he obtained said judgment, was informed

and had notice of the mortgage aforesaid, and that it was a valid and subsisting lien on the land.

Prayer for answer, without oath, for a decree of foreclosure and sale, for the payment of the notes, and for other relief, etc.

This bill was filed by H. C. McComas, as solicitor for the complainant.

On October 4, 1861, Williams filed a demurrer to bill for want of equity, as against him, in the usual form.

Hays, in his answer, denies knowledge of sale of land by complainants to Gatewood—of the price paid—of the agency of Outten—of the mistake of the notes; admits that Gatewood owned the land. Denies any notice or knowledge of the mortgage, except such as is presumed from the record, which was not until after the end of September term, 1858, of Piatt Circuit Court; admits that he obtained judgment against Gatewood and Peyton, as stated in bill, and that before its satisfaction, he claimed a lien on the land by virtue of said judgment. States the recovery of the judgment, September 14, 1858. Execution issued January 3, 1859, was returned unsatisfied. Alias *fi. fa.* January 28, 1860, levied on the land—sale March 3, 1860; he purchased, for $3,388.78, the whole amount due him; took sheriff's certificate, which was duly recorded; that Gatewood did not, nor did complainants, as his grantees, or mortgagees, or any other person, until after one year had expired, offer to redeem. Is informed and believes, that Williams obtained judgment, as stated in bill, against Gatewood, and Bruffett and Weaver; that, April 6, 1860, he sued out execution on it, which the sheriff returned unsatisfied; that, March 5, 1861, Williams sued out an alias *fi. fa.* and placed it in the sheriff's hands, and paid the sheriff $3,727.65, the amount of his bid, and ten per cent. interest, as and for a redemption from the sale to him, which he received and accepted in full satisfaction of his judgment and discharge of his lien upon and claim to the land. Denies that before he obtained judgment and issued execution, he had any notice, knowledge, or information of the existence of the mortgage, and never had any knowledge of it, except the constructive notice by the record, of date, January 19, 1859.

Answer sworn to.

Williams, by his answer, says he has no knowledge of sale by complainants to Gatewood, excepting that there appears of record, in recorder's office, deed from complainants to Gatewood, dated June 4, 1856, and recorded about same date, conveying the land to him in fee, clear of all incumbrances, and acknowledging full payment of the consideration, amount as stated in bill; says he inspected the record, believed it to be true, and acted on the faith of it in purchasing. Has no knowledge of execution of notes, or mistake therein, or of consideration thereof, and denies all the allegations of bill in that behalf. Has no knowledge, or information, that Gatewood, June 4, 1856, or at any time, executed a mortgage on the land to secure the payment of said notes, or of any notes, or of mistake in mortgage, or that it was acknowledged or delivered to Outten, and denies all allegations in bill in that behalf. Admits that there appears of record, in recorder's office, what purports to be record of mortgage from Gatewood to complainants of said land, to secure the payment, by Gatewood to himself, of two notes, each $2,132.33⅛, due June 4, 1857 and 1858; mortgage purports to be dated June 4, 1856, and to have been filed for record, January 19, 1859. Denies that he ever had any notice, knowledge or information of the mortgage, except such constructive notice as is implied from said record.

Has no knowledge whether notes, if given, are paid or not.

Admits recovery of judgment by Hays as in bill stated, September 14, 1858, against Gatewood and Peyton, for $3,047.22 and costs. *Fi. fa.* issued on same, January 3, 1859. Alias *fi. fa.* sued out by Hays, January 8, 1860, levied upon the land (describing it), which was sold by the sheriff, March 3, 1860, to Hays, for $3,388.78, the full amount due on the writ; that the sheriff executed to Hays his certificate, which was then and there duly recorded, in the recorder's office of Piatt county. Avers that neither Gatewood, nor complainants as his grantees or mortgagees, nor any other person, until after the expiration of one year, offered to redeem from that sale.

Avers that on December 29, 1859, he recovered a judg-

ment in Piatt Circuit Court, against Gatewood, Bruffet and Weaver, for $1,292.85 and costs; that he sued out execution on it April 6, 1861, which was returned unsatisfied. March 5, 1861, he sued out an alias *fi. fa.* on said judgment, placed the same in the sheriff's hands, who indorsed thereon a levy upon said land; that thereupon he paid the sheriff, $3,727.65, the amount of Hays' bid, with ten per cent. thereon from sale; that sheriff filed in recorder's office certificate of redemption, and proceeded to advertise said land for sale under said writ, and, May 7, 1861, offered same for sale, when he purchased the same, except south-west quarter of north-east quarter, and west half of south-west quarter of north-east quarter of said section, which were set off to Gatewood as a homestead, and at said sale respondent bid the whole amount of his debt and costs, over and above the amount paid by him for redeeming from Hays' sale, making, in the aggregate, $5,256.62, and thereupon the sheriff executed to him his certificate, which at the date was recorded; that no person redeemed or attempted to redeem from said sale. On the 15th of July, 1861, the sheriff conveyed the land to him by deed. Claims and insists that complainants, by failing to redeem from Hays' sale within one year, have lost and forfeited all claim to the land, and that by his redemption and payment of the money, and the sale and conveyance to him, he has acquired the same rights in the land as if he had purchased the same at the sale under the execution of Hays.

Denies that Hays, before obtaining his judgment, had notice of the mortgage as alleged in bill, or that the same was a valid and subsisting lien on the land.

Alleges that complainants at the time thereof, well knew of the recovery of the judgment by Hays, and of the issuing of the executions thereon, of the advertising and sale of the land under the same, and of the recovery of respondent's judgment, of the issuing of executions thereon, of his redemption from said sale, and of the levy, advertising and sale thereof under said execution, and .of respondent's purchase; that complainants during all of said proceedings did not set up, allege or pretend to have any claim to said land, under

said mortgage, nor did they allege or pretend that Hays had any notice of said mortgage, as is now alleged in bill, but complainants stood by and permitted said judgments, executions, levies, sales and redemption, without objection, by which conduct of complainants, respondent was induced to pay said redemption money and the said further sum bidden and paid by him in satisfaction of his said judgment; insists complainants are, and ought to be estopped from setting up claim to land under said mortgage, and from alleging that Hays had notice of said mortgage before the judgment lien of said Hays attached, so far-as the same are relied on to affect respondent's title.

Claims and insists that under said judgments, proceedings, sales, redemption, payment, and purchase by himself, payment of purchase-money, and conveyance by the sheriff as aforesaid, respondent is a *bona fide* purchaser of said land, (except that set off to Gatewood as a homestead, which he does not claim under said purchase), without notice or knowledge of any prior equity or rights of complainants.

There were replications to answers of Hays and Williams.

Bill taken *pro confesso* against Gatewood for failing to answer.

Cause was heard on bill, exhibits, answers and testimony. Decree that mortgage be foreclosed, referred to master to state an account of amount due complainants on mortgage. Master reports amount at $5,352.68⅓. Report approved; ordered that Gatewood pay the amount decreed in ninety days, with interest; on failure of Gatewood or other defendants to pay, etc., ordered that mortgage be foreclosed, and that all interest of Gatewood in mortgaged premises, and all interest of Hays and Williams acquired in said premises since execution of mortgage, be foreclosed and barred, excepting such equity of redemption as is provided by law. Land ordered to be sold by master, on notice, etc., out of proceeds; that master first pay expenses of sale, and amount due complainants, and report to court.

The following errors were assigned:

That the Circuit Court erred in overruling the demurrer of the defendant Williams, to complainants' amended bill.

That the Circuit Court erred in admitting the testimony of witnesses Milligan and McComas.

That the Circuit Court erred in rendering a decree against Williams, and in not dismissing the bill as to him.

GOOKINS, THOMAS & ROBERTS, for Plaintiffs in Error.

Williams demurred to the bill. The demurrer was overruled. This ruling presents the first question for our consideration.

The facts occurred in the following order: June 4, 1856, mortgage executed; September 14, 1858, Hays' judgment; January 19, 1859, mortgage recorded; December 29, 1859, Williams' judgment; March 3, 1860, sale under Hays' execution; March 5, 1861, Williams redeemed; May 7, 1861, sale under Williams' execution; July 15, 1861, sheriff's deed to Williams; July 23, 1861, this bill filed.

It is alleged that Hays, when his judgment lien attached, had notice of the mortgage; but it is not alleged that Williams had notice of it before Hays' judgment, nor that he knew that Hays had such notice before he purchased, paid his purchase-money, and obtained his deed.

The view of the Circuit Court was, that Hays, being affected with notice, was not a *bona fide* purchaser; and that, as the mortgage was recorded before Williams obtained his judgment, he was not a *bona fide* purchaser.

This bridge has one abutment, and all that it lacks of being able to stand, is, that the other abutment and the arch are wanting. Williams had no need to have a lien to enable him to redeem, (*Sweezy* v. *Chandler*, 11 Ill. 445,) and, if he had need, there is no connection between him and Hays.

If Williams can be affected by notice to Hays, the statute is a trap to defraud creditors, instead of a means of preventing a sacrifice of the property, and of making it pay as much of the debts as possible.

The true question, we think, is: To what does Williams' title relate? We say, it relates to Hays' judgment. The process of redemption is nothing but the opening of the bidding at the former sale. BREESE, J., in *Turney* v. *Young*, 22 Ill.

253, 255. Although a year after, it is the same in effect as if, when the hammer came down at Hays' purchase, Williams had stepped forward, paid him his money, and the auction had proceeded on Williams' bidding. Hays and Williams are as truly competitors as if the bidding had all been done at once. Their antagonism is clearly shown, if authorities are needed on so plain a proposition, by the case of *Ex parte Raymond*, 1 Denio, 272. It is there said that "a party who seeks to acquire the rights of a purchaser under the statute, must take care to comply fully with all its requirements," and that the senior creditor is not bound to aid the one who comes to redeem by imparting information for him to act upon. Reference is also made to *Waller* v. *Harris*, 20 Wend. 555; *Ex parte The Peru Iron Co.*, 7 Cow. 540, and *Dickinson* v. *Gilliland*, 1 Cow. 480—all of which are cases of competing bidders, as is also that of *McLagan* v. *Brown*, 11. Ill. 519.

The case at bar furnishes a strong illustration of the correctness of this position. Hays had bought land at about $3,000, for which Gatewood had paid $6,400. It was a handsome speculation if he could hold it. Williams was willing to advance on his bid, and did so, paying $5,246.62, and leaving Gatewood a homestead out of the land besides.

Why should notice to Hays affect Williams? If at all, it is because he had in his power the means of arriving at the truth. To whom should he go? He cannot be sent to Hays for information, because Hays, as a competitor for the land, is not bound to give any. Having in view a speculation, he will stand upon his reserved rights, and let Williams find out the facts as best he can. *Ex parte Raymond*, 1 Denio, 272.

There is no case in which a party is bound to seek information of one who has a right, or it is his interest, to withhold it. Nor is one, about to make a purchase, bound to take the hazard of information to be derived from one so deeply interested in the matter as was Hays. Reasonable diligence and precaution will subject a party to no such risk. It was said by CATON, C. J., in *Sweezy* v. *Chandler*, 11 Ill. 451, "the whole proceeding [of redeeming] is the exercise of a statutory right, which has been provided as well for the benefit of the

judgment creditors generally, as of the debtor." This is undoubtedly correct, and it may be added, that in this instance, as in all others, the general principles of equity are to be preserved in the construction of the statute.

We insist that the statute, and the decisions of this court, settle the question under consideration. The statute declares, that " such deeds shall be as valid and *effectual* in law as if such creditor had been the original purchaser." R. S. 1858, p. 610, sec. 22. If Williams had been present at Hays' sale, and had simply advanced on his bid, there is no pretense that he would have been affected by a secret notice in the mind of Hays, and he must be held to have precisely the same title as if he had bought then, for so the statute reads. The construction now claimed for this statute is the same already given to it, by this court, whenever it has been before them, and it appears to us, that it was the express intention of the legislature, by the use of the language above quoted, to give the deed the effect we now claim for it, and to rebut the presumption that the redemptioner takes only such title as the first purchaser had. *Sweezy* v. *Chandler,* 11 Ill. 445, 447, 448, 451 ; *McLagan* v. *Brown,* 11 Ill. 519 ; *Turney* v. *Young,* 22 Ill. 253.

Williams, therefore, does not take as a purchaser from Hays, but as a purchaser from the sheriff, and against the will of Hays, and he cannot be affected with what would affect Hays.

But if Williams be regarded as a purchaser from Hays, still he is protected on general principles of equity. Surely there is no principle of law better settled, than that an innocent purchaser, from a fraudulent vendee, gets a good title, if it is perfected by the payment of the purchase money, and the receiving of a conveyance before notice of a latent equity. *Jackson* v. *Henry,* 10 Johns. 185, 195 ; *Jackson* v. *Dominick,* 14 Johns. 435 ; *Martin* v. *Dryden,* 1 Gilm. 187, 217 ; Story on Bills, sec. 188.

It is contrary to the plainest principles of natural justice, that the effect of notice to Hays should be visited upon Williams.

Williams is protected by the recording acts. The statute declares that deeds, etc., shall take effect from the time of filing for record, and not before, as to all creditors and subsequent purchasers, without notice, and that, as to all such creditors and subsequent purchasers, without notice, they shall be void until filed for record. R. S. 1858, p. 969, sec. 23.

"The obvious design of our recording laws is to protect purchasers against latent equities." *McConnell* v. *Reed,* 4 Scam. 117, 121.

The term " creditor," as used in the recording acts, is defined to be one who, without notice, actual or constructive, of a prior conveyance or incumbrance, institutes such proceedings, or takes such steps as affect a lien on the land before the recording of the conveyance or incumbrance. *Martin* v. *Dryden,* 1 Gilm. 217.

Williams, by redeeming, became the owner of a judgment lien older than Tatnall's mortgage, and without notice of it, or rather with notice that it was junior to the lien so acquired. The withholding of a deed from record, is always put on the footing of fraud; and that Williams is defrauded, if this bill can be sustained against him, no one can doubt. The effect of the decision below was to pay a premium for negligence and fraud, at the expense of the innocent and vigilant. Is not this a wholesale reversal of the established principles of equity ?

Constructive notice cannot be enlarged. It is that and nothing more.

Should it be determined that the bill was sufficient on demurrer, we proceed to say that, upon the proofs, the case is with the plaintiffs in error.

Answers were filed by Hays and Williams, denying any knowledge of the mortgage, except the constructive notice furnished by the record. To prove notice to Hays, complainants introduced the testimony of Thomas Milligan, H. C. McComas and James Peyton.

We objected to the testimony of these witnesses, the objections were overruled, and they were admitted to testify. The

ground of our objection was, that it was a disclosure of privileged communications.

A. B. BUNN, and W. E. LODGE, for Defendants in Error.

Notice to an agent or attorney, is notice to a principal or client. And such notice, if sufficient to put a party upon inquiry, leading to the whole truth, is all that is necessary in law. See *Barnes* v. *McClinton*, 3 Penrose & Watts (Penn.) R. 67; 7 Conn. 333; Breese, 33; *Day* v. *Graham*, 1 Gilm. 435.

In this case, McComas, whom they claim was the attorney of Hays from the beginning of Hays' suit, as the evidence shows, had notice of the existence of Tatnall's mortgage from the time of its execution.

As to what will constitute notice, and its effect, see *Doyle et al.* v. *Teas et al.*, 4 Scam. 249, 250; *Rupert* v. *Mark*, 15 Ill. 542; *Cox et al.* v. *Milner*, 23 Ill. 476; 22 Ill. 610.

What rights does a redemptioner, under our statutes, acquire? To what does his title relate?

The plaintiffs desire to avail themselves of the lien of Hays, (if he had one,) so as to cut out the equities of Tatnall, under their mortgage, but at the same time, do not wish to be put in Hays' shoes, and have his title resting on Hays' judgment. We make the point that Williams' title refers and relates to his own judgment alone. See *Turney et al.* v. *Young*, 22 Ill. 253. And that Williams cannot go behind his own judgment and attach the lien of a prior judgment to that of his own. Williams had notice of the mortgage before he obtained his judgment, and before Hays sold the land under his judgment—the mortgage having been filed and recorded.

There can be no error in admitting the evidence of McComas, because at the time he first informed the agent of Hays, and his attorney, Milligan, McComas was not the attorney of Hays, and because his knowledge of the execution of the mortgage was not obtained by reason of the relation of client and attorney, but before any such relation existed. See Greenleaf on Evidence, 1st vol., secs. 237—245; also Starkie on Evidence, 2nd vol., pp. 229—231.

McComas was not incompetent on the ground of interest, because he executed a proper release and delivered the same to Bunn, one of the solicitors for Tatnall, who delivered the same to the clerk of the court, for the use of Tatnall. This he had a right to do. See Greenleaf on Evidence, vol. 1, secs. 426, 429.

CATON, C. J. When the facts of this case are once clearly comprehended, there is no difficulty in deciding it. The whole case is reduced to the simple question of fact, whether Hays and Williams are chargeable with notice of this mortgage at the time of their purchases. The mortgage was executed before, but not recorded till after, Hays' judgment became a lien, but before Williams' judgment, under which he redeemed from the sale under Hays' judgment, became a lien.

The first and important inquiry is, was Hays chargeable with notice of this mortgage? The evidence, we think, is sufficient to settle this question satisfactorily. There is no pretense that Hays had any personal knowledge, or even intimation, of the existence of the mortgage. But the notice relied upon is to his agent. The law is not disputed, that notice to an agent or an attorney, when received in the course of the business of the agency, or under such circumstances as induce the satisfactory belief that it was received while transacting such business, is as effectual as notice to the principal personally. First, as to notice to Purcell, Hays' agent, who brought out the note and employed Milligan and McComas to sue the makers. He denies notice. Peyton swears he heard Gatewood inform him, that his land was already mortgaged, but did not state to whom. Milligan testified, that the mortgage. to Gatewood's grantors was mentioned to Purcell, at an interview before judgment was rendered, and McComas swears, distinctly and circumstantially, that he told Purcell of that mortgage, as it had been acknowledged before him as notary public. Now if this testimony was competent, it overcomes the denial of Purcell beyond all question, and settles the matter. But it is by no means clear, that what was said at this time

between the agent and the attorneys was not a privileged conversation, which even Williams may insist shall be kept sacred. It was a professional interview with the attorneys on the subject-matter about which they were retained, and none but Hays, the client, should be permitted to waive its confidential character.

But waiving this question of notice to Purcell, notice to the attorneys was as effectual as notice to the agent. As to that matter, they as much represented Hays, as did Purcell. Had they notice? Upon this point there can be no question. McComas swears that he took the acknowledgment of the mortgage. He knew what it was, and told Milligan and Purcell of it. Now this information was not acquired in any confidential relation with Hays, but long before any retainer by him, and hence he had the right and was bound to disclose it. Here then was notice to McComas proved in a legitimate way, and that was notice to his client, for the law conclusively presumes, that he communicated that notice to his client.

Under the operation of this notice, Hays' judgment only became a lien upon the equity of redemption, and that was all that was sold, leaving the mortgage a prior lien according to its date. As to Williams' judgment, that never became a lien till long after the mortgage was recorded, and hence was necessarily subject to it. When he redeemed from Hays' sale, he could redeem no more than was sold under Hays' judgment, that is to say, the equity of redemption, and it was only upon that, as we have seen, that his own judgment could attach as a lien ; and we are quite unable to appreciate, upon what principle he expects to get rid of the incumbrance of the mortgage by the operation of two judgments, both of which were subject to it. Had Hays not been chargeable with notice, so that his judgment had become a prior lien to the mortgage which attached to the entire estate, then indeed a different question would be presented. But we do not now propose to determine what estate the redeeming judgment creditor, whose judgment is junior to the mortgage, acquires, by a sale under such junior judgment upon a redemption from a sale under a judgment senior to the mortgage. In this case,

we have no trouble in coming to the conclusion that the mortgage retains its seniority over both, as much as over either.

It is most earnestly contended by the counsel for the plaintiff in error, that the last clause of the twenty-second section of the statute, gives to Williams all the rights he would have had if he had been a stranger, and the original purchaser at the sale under Hays' judgment, instead of Hays, thus giving him the character of a *bona fide* purchaser without notice. The language relied upon is this: "And if any creditor shall redeem such lands or tenements as aforesaid, it shall be the duty of the sheriff, or other officer, on the expiration of fifteen months from the time of such sale, to execute a deed to such creditor, as the original purchaser, and such deed shall be as valid and effectual in law, as if such creditor had been the original purchaser." When this language is considered in connection with the balance of the act, it is not easy to comprehend its meaning. It contemplates the execution of a deed under circumstances which are not only not provided for by the act itself, but which are absolutely repugnant to the other provisions of it. It seems to contemplate the execution of a deed to the redeeming creditor, upon the mere fact of redemption, and the lapse of time, to wit, the expiration of fifteen months, without any subsequent sale. Now when the whole act is taken together, it is very clear that the legislature did not design that a deed should be executed under such circumstances; and we should have great difficulty in sustaining such a deed, notwithstanding this language is found in the act. In the previous sections, very minute and clear provision is made for proceeding in case of redemption by a judgment creditor. Section fourteen provides, that at any time within three months after the expiration of twelve months from the sale, any judgment creditor may redeem, by suing out an execution upon his own judgment, and placing the same in the hands of the officer, who shall indorse thereon a levy upon the same lands, and then the redeeming creditor shall pay to the officer the amount for which the premises were first sold, and then the officer shall file a certificate of redemption and advertise the property for sale, under the new execution.

The next section provides, that at the sale under the execution ῾issued upon the judgment upon which the redemption was made, the redeeming creditor shall be considered as having bid the amount of the redemption money deposited by him, and if there be no higher bid, the land shall be ῾struck off to him, and a deed immediately executed, and that no other redemption shall be allowed. But if there be a higher bid, then the land shall be struck off to the highest bidder, and a certificate of purchase made to the purchaser; and then any other judgment creditor shall be allowed to redeem within sixty days, and the same process shall be gone through ; and so long as the premises shall be sold for more than the redemption money, and there are judgment creditors to redeem, redemptions shall be allowed within sixty days of the day of sale, from which the redemption is made.

Here are two contingencies, under which the sheriff is required to make a deed of premises, which have been redeemed from a former sale by a judgment debtor, neither of which has the least reference to the expiration of the fifteen months. The first is, where the premises are struck off to the redeeming creditor, upon the implied bid for the amount of the redemption money, when the deed is to be made immediately, whether the fifteen months have expired or not; and the next is, where there has been a higher bid, when there may be redemptions within periods of sixty days, without limit, so long as there are judgment creditors willing to redeem, so that years might elapse before the sheriff would be authorized to make a deed to any purchaser. It is very certain that the language quoted from the twenty-second section can have no reference to either of these cases, for in the first, the purchaser is not bound to wait till the end of fifteen months for his deed ; in the last, he may be compelled to wait much longer. To what, then, does it apply ? Certainly to no case provided for in this statute. A glance at the previous legislation on this subject, will clearly explain how this has happened. By the territorial act of 1807, real estate was first authorized to be sold on execution. From that sale there was no redemption, but a conveyance was at once made. And so

the law stood till 1825, when an act was passed, by the eleventh section of which the debtor was allowed to redeem from the sale, within twelve months, and the twelfth section provided that if the defendant should fail to redeem within the twelve months, then any other judgment creditor might redeem in the same manner as the debtor could, and that the redeeming judgment creditor should "be entitled to all the rights of the original purchaser." The next section of that act is the original, of which this twenty-second section of our law is a literal copy. It was a very sensible section when passed, for it was precisely adapted to the mode of redemption therein provided for; but in our present law it has no sense or meaning, because there is no mode of redemption authorized, upon which it can operate, or to which it can apply. But to proceed with the history of our legislation on this subject. The mode of redemption provided by the law of 1825, continued till 1841. Then an act was passed, amending the law of 1826, providing for redemption from sales on execution, as it now exists. The whole of that act is embodied in the thirteenth, fourteenth, fifteenth, sixteenth, seventeenth, eighteenth, nineteenth, twentieth, twenty-first, twenty-third and twenty-fourth sections of our present law. But in that amendment the thirteenth section of the law of 1825, which now constitutes the twenty-second of our present law, was left out, and in fact repealed, because it was inconsistent with the mode of redemption provided in the new act. And so our statutes remained unincumbered by this unnecessary section, till the revision of 1845, when it was again incorporated into our statutes, without any reason or purpose, so far as we can see.

We have, in the cases of *Sweezy* v. *Chandler*, and *McLagan* v. *Brown*, 11 Ill. 445 and 519, referred to this twenty-second section as applicable to the present law, and as characterizing the title acquired. But in both cases it is alluded to, as a make-weight, and without careful consideration; while the cases were decided upon other grounds. And we may here remark, that this infirmity of the human mind which prompts us to seek every possible support for the con-

clusions arrived at, has led to more embarrassment in applying judicial decisions as precedents, than any other one cause. We too often forget that an opinion with one good reason for a decision, is better than an opinion with one good reason, and one that is not good. We know of no other way to even mitigate this evil, than for courts, when thus betrayed into error, to set themselves right on the first opportunity.

The decree must be affirmed.

*Decree affirmed.*