# CHARLES ROSE

*v.*

# THOMAS SWANN *et al.*

1. RESCISSION OF CONTRACT — *in equity* — *delay by purchaser in making payment.* In the year 1857, the owner of a lot of land executed a contract of sale for the same at $11,390.62, one-fourth cash, and the residue in one, two and three years. The purchaser paid only $140.62. In October of the same year, an assignee of the purchaser paid one-fourth the purchase money and received a deed from the original vendor for one-fourth the land. The remaining three-fourths of the purchase money was never paid. In 1866 the original vendor filed his bill in chancery, against his vendee and others claiming under him, to enforce the payment of the purchase money, or the cancellation of the contract in the event of non-payment: *Held,* the vendor was entitled, after such *laches,* to have the contract declared forfeited.

2. SPECIFIC PERFORMANCE — *laches.* A purchaser of land, who filed his bill for specific performance, had become the assignee of a contract of purchase of the premises at $400, one-fourth cash, and residue in one, two and three years from May, 1857, and the payment of taxes. The assignee, seeking relief, made only one payment on the contract, that due May, 1858. The payments due in 1859 and 1860, were never paid, nor was any tender made until about the time of filing the bill, in September, 1868,

nor had the complainant paid any taxes: *Held,* the gross delay in not performing the terms of the contract, utterly forbid the interposition of a court of equity.

3. PARTIES— *bill for specific performance, by a vendor.* Subsequent purchasers from one who holds under a contract of purchase of land, are not necessary, although they are proper, parties to a bill by the original vendor for specific performance.

4. ESTOPPEL — *cancellation of a contract of sale — rights of subsequent purchasers.* A decree declaring a contract of sale of land forfeited, on account of *laches* on the part of the vendee in making payment, will bar any relief sought by a subsequent purchaser from such vendee against the original vendor, although such subsequent purchaser was not a party to the suit in which the decree was rendered.

5. SPECIFIC PERFORMANCE — *laches — subsequent purchasers.* Where a purchaser of land has been guilty of such laches, that he could not compel a specific performance as against his vendor, a subsequent purchaser from such vendee, would hold no better position.

APPEAL from the Superior Court of Chicago; the Hon. JOHN A. JAMESON, Judge, presiding.

The opinion states the case.

Messrs. ROGERS & GARNETT, for the appellant.

Mr. MILTON T. PETERS, for the appellees.

Mr. JUSTICE THORNTON delivered the opinion of the Court:

This was a suit in chancery, commenced in the court below, on the 18th day of September, 1868.

It is claimed to be either a suit to compel specific performance, or a suit to redeem from a mortgage.

The bill was originally against Swann alone, for specific execution of a contract between Swann and Scanlan for certain real estate. It was afterward amended, making appellees parties.

The admitted facts are, that, in 1857, Lancaster made a contract in writing, for the sale of twenty-five acres of land to

Cleaver, for $11,390.62, one-fourth cash, and the remaining three-fourths in payments in one, two and three years. Cleaver only paid $140.62; and on the 30th of April, 1857, assigned the contract to Swann, one of appellees. In October, 1857, Swann paid to Lancaster one-fourth of the purchase money, and Lancaster conveyed to him one-fourth of the land. The remaining three-fourths of the purchase money have never been paid. Swann subdivided the twenty-five acres into 289 lots, and received a deed for 72 lots, which were accepted as the one-fourth. The lots in controversy are embraced in the list of lots, the legal title to which remained in Lancaster. The contract between Swann and Scanlan, assigned to appellant, was for the sale of four lots for $400, one-fourth cash, and the balance in equal annual payments, on the 11th of May, for three succeeding years, from May, 1857, and the payment of taxes by Scanlan. Appellant made one payment to Swann in May, 1858. Nothing more was paid on this contract; and no tender was made until just before the commencement of this suit; and neither Scanlan nor appellant ever paid any taxes.

Nothing having been paid to Lancaster since 1857, on the contract between him and Cleaver, he filed his bill in chancery, in 1866, against Cleaver, Swann, Scanlan, and other parties who had purchased of Swann, to enforce the payment of the purchase money, or the cancellation of the contract in the event of non-payment; but did not make appellant a party, though the contract, by virtue of which he claims specific performance, with the assignment thereon, was duly recorded on the 9th of June, 1858. The court granted a decree, barring the defendants from all equity of redemption in the premises comprising the lots claimed by appellant, and ordered that the contract between Lancaster and Cleaver be declared void and canceled. Lancaster then sold and conveyed the three-fourths of the twenty-five acres to Blodgett, and Blodgett conveyed to Prout and Coleman. The latter deed was recorded on the 1st of October, 1867. Before the commencement of this suit, Prout and Coleman had made improvements

on some of the lots, and near to lots claimed by appellant, at a cost of more than $38,000. The lots in controversy had, from the time of the purchase by Prout and Coleman to the commencement of the suit, advanced from $150 to $1,000 each.

Lancaster had the unquestioned right to have his contract with Cleaver declared forfeited. Neither Cleaver, nor his assignee, Swann, had attempted to comply, but had neglected, for nine years, either to discharge any part of the payments or to pay any portion of the taxes. Six years had elapsed after the maturity of the last payment before Lancaster instituted his suit. We think that neither Cleaver nor Swann was in position to compel specific performance. How can appellant be in better condition? He derived no right from Lancaster; and Swann, from whom he claims, had been guilty of inexcusable *laches.* If the party contracting with Lancaster, or his assignee, could not enforce the contract, how could this appellant, between whom and Lancaster there was no privity? Appellant was also guilty of too much delay and *laches* to entitle him to relief in a court of equity. The last payment made by him was in May, 1858. Two payments then had to be made, one in May, 1859, and one in May, 1860. The excuse is offered that he made general inquiry, and could not find his creditor. Yet it appears that Swann was a resident of Chicago, with his family, and doing business there, from 1860 to 1868; and appellant also resided in Chicago, and had actual notice of the suit commenced by Lancaster in 1866. It is apparent that, by proper and reasonable effort, Swann might have been seen, and the money paid or tendered, in the course of eight years.

Appellant was, by the terms of the contract, to pay the taxes. This he neglected. True, he says he tried to pay; but some person was always ahead of him. Had he been prompt, as the contract and law required, he certainly could have paid the taxes, once in eight years. The gross delay, in not performing the terms of the contract, utterly forbids the interposition of a court of equity. *Hough* v. *Coughlan*, 41 Ill.

134; *D'Wolf* v. *Pratt,* 42 id. 198; *Thompson* v. *Bruen,* 46 id. 125.

If appellant had not lost all his rights by gross *laches,* still the decree obtained by Lancaster is an estoppel. By that decree the original contract was canceled. The only instrument which gave to appellant a standing in court was annulled. The foundation was removed and the whole edifice fell. We are met with the reply that appellant was not a party to the suit. He was not an indispensable party. He could only be regarded in the same light as subsequent incumbrancers. The rule deducible from the authorities is, that such persons are not necessary, although proper, parties. This court has frequently decided that a mortgagee need not examine the record for subsequent liens, which cannot impair his prior right. This would be too great burden upon him. *Matteson* v. *Thomas,* 41 Ill. 110; *Iglehart* v. *Crane & Wesson,* 42 id. 261. We do not think that the proof shows *actual* notice to Lancaster of appellant's purchase. Lancaster and Prout both testify that they had no knowledge of it. All the equities of appellant were, then, determined by the decree in 1866.

It would be a harsh rule, and not in consonance with the principles of equity, to require a vendor, in a bill for specific performance, to make parties, all subsequent purchasers from his vendee. They have no claim upon him, unless they hold the original contract; and, consequently, there is no privity between them. This parceling of a contract is wrong in principle, and would be oppressive in practice.

The court below decided correctly in dismissing the bill. The decree rendered is affirmed.

*Decree affirmed.*