PRUDENCE B. SAUR

*v.*

URIAH B. FERRIS *et al.*

*Filed at Ottawa, May 9, 1893.*

1. SPECIFIC PERFORMANCE—*inability to perform—a sufficient defense.* The owner of the land being desirous of a speedy sale of it, authorized two separate agents to sell the same, and each made contracts for that purpose. The owner conveyed to the prior purchaser, and the other purchaser filed his bill for the specific performance of his contract: *Held,* that the owner could not be compelled to convey to the complainant, and that the bill was properly dismissed.

2. When it is out of the power of the defendant to perform his agreement, such fact necessarily constitutes a sufficient reason why the court should refuse to decree specific performance, that is, to enter a decree which would be nugatory because of the impossibility of its execution.

3. And this is the case, although the defendant may have been in a situation to carry out the contract when he entered into it, but afterward deprived himself of the ability to do it by his own voluntary and wrongful act. If, for instance, A, after entering into a valid agreement to sell and convey land to B, should convey it to C, who is a *bona fide* purchaser for value without notice, A, by depriving himself of the power to fulfil his agreement with B, deprives B of the right to a decree for specific performance.

4. And it is equally true, that where the incapacity to perform arises from a conveyance to another party, who, having notice of the complainant's contract, has the prior right to a conveyance, a decree of specific performance will not be made.

5. SAME—*retaining bill for the assessment of damages.* It is well settled that when the defendant's incapacity to perform the contract, though caused by his own act, as by his conveyance to a *bona fide* purchaser, is known to the complainant at the time of bringing suit, the bill will not be retained for the assessment of damages, but will be dismissed, leaving the complainant to his legal remedy.

APPEAL from the CircuitCourt of Cook County; the Hon. O. H. HORTON, Judge, presiding.

Messrs. RICH & STONE, for the appellant:

The Court should have retained the bill and assessed the damages of the complainant. *Croswell* v. *Oliver,* 42 Ill. 41; *Cable* v. *Ellis,* 86 Ill. 525.

Mr. IRA W. BUELL, for the appellees:

As the complainant knew before filling her bill that Brown had conveyed to Jackson, thus putting it out of his power to perform her contract, she was not entitled to have damages assessed. *Daniel* v. *Green,* 42 Ill. 471; *Stickney* v. *Goudy,* 132 Ill. 213; *Kennedy* v. *Hazelton,* 128 U. S. 667.

Mr. CHIEF JUSTICE BAILEY delivered the opinion of the Court:

This was a bill in chancery, brought by Prudence B. Saur against Uriah B. Ferris, Robert A. Brown and Charles H. Jackson, to enforce the specific performance of a contract, entered into by Brown, through Ferris as his agent, for the sale and conveyance to the complainant of a lot of land situate on the northeast corner of Seventy-eighth street and Bond avenue, Chicago. The defendants appeared and answered, and the cause being heard on pleadings and proofs, a decree was rendered dismissing the bill at the complainant's costs for want of equity. To reverse that decree, the complainant has now brought the record to this court by appeal.

The facts appearing by the pleadings and proofs are these: Brown, who is a resident of Denver, Colorado,

being the owner of the property in controversy, and being desirious of making a speedy sale of it, employed and authorized Ferris, who resided near the property, and also the firm of Bowes & Cruickshank, real estate dealers doing business in Chicago, to sell it. In March, 1889, at very near the same time, each of these agencies negotiated a contract for the sale of the property, and executed to the respective purchasers a memorandum of the sale in writing. Bowes & Cruickshank sold to Jackson, and Ferris to the complainant. The memorandum given by Bowes & Cruickshank to Jackson bore date March 9th, 1889, and was placed on record March 16, 1889, while the one given by Ferris to the complainant, and which she now seeks to have specifically enforced, bore date March 12, 1889, and was placed on record March 18, 1889. That memorandum was as follows:

"WINDSOR PARK, ILLS., Mch. 12–89.

"This memorandum is to say that I, Uriah B. Ferris, as agent of R. A. Brown, agrees to sell, and Prudence B. Saur agrees to buy, lot on the N. E. corner of Bond avenue and Seventy-eighth street, having frontage of 137 feet on Bond and 100 feet on Seventy-eighth for the sum of two thousand dollars ($2,000) cash, paying as earnest money the sum of $100 and balance $1,900 in thirty days, or as soon as the abstract and deed can be furnished. If the second party should fail, the said earnest money to be retained as liquidated damages and if first party should fail the said earnest money to be returned. To retain permission to remove the sand when sidewalk is to be laid.

"URIAH B. FERRIS, Agent.
"P. B. SAUR."

Brown, on being informed what his agents had done, took such measures as he could to ascertain which purchaser was entitled to priority, and also endeavored to have the matter compromised between them. Being unable to get the matter settled, and being informed, after diligent

inquiry, that Jackson's contract had priority both as to the time of its actual execution and as to the date of its being recorded, executed a deed, bearing date June 21, 1889, conveying the property to Jackson. On the 19th day of September, 1889, which was nearly three months after this conveyance was made, and after the complainant had constructive, and as we think the evidence tends to show, actual notice of its execution, the present bill was filed.

The principal controversy at the trial, so far as the facts were concerned, was upon the question whether, the contract of sale with Jackson was prior in point of time to the complainant's contract, the contention being that Bowes & Cruickshank, having learned of the sale made by Ferris to the complainant, sold the property to Jackson, and to give their sale the appearance of priority, dated it back to a day prior to the sale to the complainant. We have examined the evidence with care, and while there may be some circumstances sufficient to furnish a reasonable foundation for a suspicion that the Jackson contract was dated back, yet we are of the opinion that the strong preponderance of the evidence is the other way. At all events, no tenable ground is shown for setting aside the finding of the chancellor who saw and heard the witnesses, and who was consequently in a better position to judge of their relative credibility than we can be.

Assuming then that the chancellor was correct in his findings as to the facts, it is manifest that no case is made out for the specific enforcement of the complainant's contract. Jackson's purchase being prior in point of time, his equitable right to a conveyance was paramount, and Brown having conveyed to him, as he was both legally and equitably bound to do, can not be compelled to convey to the complainant.

Where it is out of the power of the defendant to perform the agreement, such fact necessarily constitutes a sufficient reason why the court should refuse to decree specific

performance, that is, to enter a decree which would be nugatory, because of the impossibility of enforcing its execution. And this is the case, although the defendant may have been in a situation to carry out the contract when he entered into it, but has afterwards deprived himself of the ability to do it by his own voluntary and wrongful act. If, for instance, A, after entering into a valid agreement to sell and convey land to B, should convey it to C, who is a *bona fide* purchaser for value and without notice, A, by depriving himself of the power to fulfil his agreement with B, deprives B of the right to a decree for specific performance. Waterman on Specific Performance, Sec. 125; Pomeroy on Specific Performance, Sec. 294; Fry on Specific Performance, Sec. 969. And it is equally true that where the incapacity to perform arises from a conveyance to another party, who, though having notice of the complainant's contract, has the prior right to a conveyance. The refusal of the court to decree specific performance was therefore clearly right.

But it is contended that the court should have retained the bill for the assessment of damages. The rule is well settled, that where the defendant's incapacity to perform the contract, though caused by his own act, as by his conveyance to a *bona fide* purchaser, is known to the complainant at the time of bringing suit, the bill will not be retained for the assessment of damages, but will be dismissed, leaving the complainant to his legal remedy for their recovery. *Kennedy* v. *Hazelton*, 128 U. S. 667; *Doan* v. *Mauzey*, 33 Ill. 227; *Stickney* v. *Goudy*, 132 id. 213.

But the complainant insists that, in point of fact, at the time she filed her bill, she had no knowledge that the premises had already been conveyed to Jackson. In her testimony she assumes to deny that she had such knowledge, either at the time of filing the bill or at date of the hearing, but when her testimony is taken all together, her real

meaning seems to be that she did not know or believe that a valid conveyance had been executed, that is, a conveyance which would prevail as against what she supposed to be her paramount right. But in her bill she alleges that Brown had pretended to sell the premises to Jackson, and had pretended to surrender the same to the use of Jackson, his heirs and assigns, and that Jackson had been admitted upon such surrender, and then alleges that Jackson, at the time he paid the purchase money, had some notice of her equitable rights. These allegations, taken in connection with all the other evidence in the case, in our opinion fully warrant the conclusion, that at the date of filing the bill, the complainant had full knowledge that the premises had been conveyed by Brown to Jackson, so as to be placed beyond the reach of a bill for specific performance.

We think the decree is sustained by the evidence, and it will therefore be affirmed.

*Decree affirmed.*