181    633
205    ³345

IDA E. MACK

*v.*

ALEXANDER MCINTOSH *et al.*

*Opinion filed October 19, 1899.*

1. VENDOR AND PURCHASER—*vendee cannot urge an objection to title which he has purposely created.* A vendee cannot urge, as an objection to the vendor's title, a mechanic's lien which he has induced a contractor to file for the purpose of putting a cloud upon the title and to embarrass the vendor in carrying out the agreed sale.

2. SPECIFIC PERFORMANCE—*equity will not permit vendee to take advantage of his bad faith.* A court of equity will not decree specific performance of a contract for the sale of real estate in favor of the purchaser or his assignee, where the failure to perform was due to an objection to the title urged in bad faith by the purchaser.

3. SAME—*when equity will not retain bill to assess damages.* A bill for the specific performance of a contract for the sale of real estate will not be retained for the assessment of damages, but will be dismissed and complainant left to his legal remedy, where he knew, when he brought the suit, of the vendor's incapacity to perform the contract because he had conveyed the property to a *bona fide* purchaser.

4. CONVEYANCES—*copy of contract is not entitled to be recorded.* The mere copy of a contract cannot be recorded, as it has no legal authority and is not an instrument of which the law takes notice.

5. NOTICE—*record of unsigned copy of contract not constructive notice.* The record of an unsigned copy of a contract to sell land will not operate as notice to one who in good faith accepts a deed from the vendor or deprive him of the character of *bona fide* purchaser.

6. SAME—*what not such possession as constitutes notice.* That a person has some hardware stored in the cellar of a building does not, in the absence of anything to indicate his ownership of it, constitute such possession of the premises as will operate as notice, to a purchaser, of his equities.

7. SAME—*when knowledge of agent cannot be imputed to principal.* A *bona fide* purchaser of land from a vendor, who had theretofore entered into a contract of sale with another person, is not chargeable with notice of the contract because the attorney at law who acted as his agent in purchasing the property had acquired knowledge of such contract while acting as the legal adviser of the vendor.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. W. G. EWING, Judge, presiding.

This is a bill, filed on May 27, 1892, by Ida E. Mack, plaintiff in error, against Alexander McIntosh and Francis O. Matthiessen, defendants in error, and one Charles P. Packer, for the specific performance of a contract for the sale of real estate, situated in Chicago. Default was entered against Packer for want of an answer. Answers were filed by the defendants in error, McIntosh and Matthiessen. Replications were filed to the answers. Testimony was taken in open court before the chancellor. On April 3, 1894, a hearing was had upon the evidence taken, and a decree was entered, dismissing the bill at the costs of the complainant for want of equity. The present writ of error is sued out for the purpose of reviewing the decree so entered.

The contract, the specific performance of which is sought to be enforced by the bill, bears date May 6, 1890, but appears not to have been executed until May 8, 1890. The contract for the sale of the premises in question, so executed on May 8, 1890, was made between the defendant in error, Alexander McIntosh, as vendor, and Charles P. Packer, as vendee. On April 30, 1891, Packer sold and assigned all his interest in the contract to his sister, Ida E. Mack, plaintiff in error, who filed the present bill, as such assignee of the contract. On July 23, 1890, Alexander McIntosh and his wife executed a deed of that date to Francis O. Matthiessen, conveying the premises in question for the expressed consideration of $70,000.00, which deed was recorded on July 23, 1890.

By the terms of the contract in question, McIntosh agreed to sell, and Packer agreed to purchase, the said premises at the price of $67,000.00, subject to existing leases and subject to an encumbrance thereon of $30,-000.00, which Packer assumed and agreed to pay. The contract further provided, that Packer had paid $3000.00, as earnest money to be applied on the purchase when consummated, and had agreed to pay "within ten days after the title has been examined and found good," the

further sum of $12,000.00, provided a good and sufficient warranty deed, conveying a good title, should then be ready for delivery. The contract also provided, that the balance of the purchase money, to-wit, $22,000.00, should be payable in three years, and be secured by note and mortgage or trust deed upon the property. By the terms of the contract, a complete abstract of title, or merchantable copy, was to be furnished by the seller within a reasonable time, with a continuation thereof brought down to cover the date, at which it was made; and the contract provides, that, "in case the title upon examination is found materially defective within ten days after said abstract is furnished, then the material defects shall be cured within sixty days after written notice." The contract also provides that, should the purchaser fail to perform the contract promptly on his part in the manner and at the time therein specified, the earnest money paid as above shall, at the option of the vendor, be forfeited as liquidated damages, and the contract shall be, and become, null and void. Time was made of the essence of the contract and all the conditions thereof; and, by its terms the sale was to be "consummated within ten days after delivery of abstract to buyer, showing good title to same." By the terms of the contract, the contract itself and the earnest money were to be held by the parties, each a copy, for their mutual benefit; and the contract and the earnest money, amounting to $3000.00, were "to remain in escrow with J. E. Kimball pending closing of this sale."

Packer was, at the time of the making of the contract, president of the Park National Bank of Chicago. The earnest money was not paid in cash, but a check on the Park National Bank, dated May 8, 1890, for the sum of $3000.00, signed by Charles P. Packer, and payable to the order of Alexander McIntosh,—and across the face of which were written the words, "Accepted, payable through Chicago clearing house, May 8, 1890," these words

being signed by the Park National Bank,—was deposited in escrow with Kimball to be held by him according to the terms of the contract.

. The abstract of title, brought down to and including May 7, 1890, was furnished to the attorney of Packer by McIntosh on May 15, 1890. The attorney of Packer completed his examination of the title on May 24, 1890, and, on the evening of the latter day, submitted to McIntosh his written opinion in regard to the title, stating various objections thereto. On May 26, 1890, McIntosh, and his attorney, and certain other parties, made a tender of a deed and of certain papers intended to cure the objections to the title, to Packer at his bank. Packer refused to accept the deed, or to pay the $12,000.00, or to execute the notes and mortgage for $22,000.00, upon the ground that the title was not good, and that the objections thereto, made by his attorney, had not been properly cured. On May 27, 1890, McIntosh served a written notice upon Packer, that he had elected to declare the contract forfeited, and had exercised his option to declare the earnest money forfeited to him as liquidated damages.

Shortly after these transactions, and in June or July, 1890, the Park National Bank failed. After the failure of the bank, and some time in July, 1890, Kimball delivered the check to McIntosh. Some time thereafter the check was paid to McIntosh by the receiver of the bank.

DEFREES, BRACE & RITTER, for plaintiff in error:

The remedy by bill in equity seeking specific performance is the natural, usual and proper remedy for breach of contract to sell and convey real estate, and, if the contract is fair, reasonable and definite in its terms, such relief goes as a matter of course. 22 Am. & Eng. Ency. of Law, 941; *Young* v. *Daniels*, 2 Iowa, 126; *Throckmorton* v. *Davidson*, 68 id. 643; *Fowler* v. *Marshall*, 29 Kan. 665; *Popplein* v. *Foley*, 61 Md. 381; *Shriver* v. *Seiss*, 49 id. 384; *Aston* v. *Robinson*, 49 Miss. 348; *St. Paul Division* v. *Brown*,

9 Minn. 157; *Johnson* v. *Dodge,* 17 Ill. 433; *Lyman* v. *Gedney,* 114 id. 388.

An assignee of a contract for the sale of real estate has the same rights and remedies for the enforcement thereof as his assignor. *Wass* v. *Mugridge,* 128 Mass. 394; *Love* v. *Sortwell,* 124 id. 446; *Gannett* v. *Albree,* 103 id. 372; *Robbins* v. *McKnight,* 5 N. J. Eq. 642; *Ewins* v. *Gordon,* 49 N. H. 444; *Ricker* v. *Moore,* 77 Me. 292.

If the grantor of the vendee took with notice of the contract he is bound thereby and acquires no greater right than his vendor, and the contract may be enforced against him as well as the vendor. *Hunter* v. *Bales,* 24 Ind. 299; *Wilson* v. *Emig,* 44 Kan. 125; *Lovering* v. *Fogg,* 18 Pick. 540; *Hayward* v. *Cain,* 110 Mass. 273; *Gummett* v. *Gingrass,* 77 Mich. 369; *Young* v. *Young,* 45 N. J. Eq. 27; *Laverty* v. *Moore,* 33 N. Y. 658; *Otis* v. *Payne,* 86 Tenn. 663.

The agent of the vendor's grantee had notice of the contract in question, and such notice is notice to his principal. *Ventres* v. *Cobb,* 105 Ill. 33; *Whitney* v. *Burr,* 115 id. 289; *Jackson* v. *Horton,* 126 id. 566.

The purchaser was put on inquiry by the recording of the unsigned copy of the contract in question, and could have had knowledge of the facts by ordinary diligence, and consequently is bound whether he had actual knowledge or not. *Doyle* v. *Teas,* 4 Scam. 202; *Stokes* v. *Riley,* 121 Ill. 166; *Robbins* v. *Moore,* 129 id. 30; *Anthony* v. *Wheeler,* 130 id. 128.

A purchaser who has bargained for a good title can not be compelled to take one which is even subject to suspicion. It must be free from reasonable doubt; a title to which no reasonable man would object; one which a prudent man would not hesitate to purchase at a full market price. *Brown* v. *Cannon,* 5 Gilm. 174; *Mead* v. *Altgeld,* 136 Ill. 298; *Bishop* v. *Newton,* 20 id. 175; *Lancaster* v. *Roberts,* 144 id. 213; *Wallace* v. *McLaughlin,* 57 id. 53; *Hale* v. *Cravener,* 128 id. 408; *Gradle* v. *Warner,* 140 id. 123.

PRUSSING & MCCULLOCH, for defendants in error:

To entitle a party to relief he must come with clean hands and a cause that appeals to equity for relief. *Doyle* v. *Teas,* 4 Scam. 265; *Tamm* v. *Lavalle,* 92 Ill. 270; *Kelly* v. *Kendall,* 118 id. 654; 1 Pomeroy's Eq. Jur. 432.

No one should be permitted to take advantage of his own wrong. *Kassing* v. *Durand,* 41 Ill. App. 104; *People* v. *Holden,* 82 Ill. 101; Broom's Legal Maxims, 279; *Dunaway* v. *Robertson,* 95 Ill. 426.

He who prevents a thing being done shall not avail himself of the non-performance he has occasioned. *Bass* v. *Gilliland,* 5 Ala. 761; Broom's Legal Maxims, 282; Fry on Specific Per. p. 282, sec. 639; *People* v. *Holden,* 82 Ill. 102.

Where the purchaser is not entitled to specific performance of the contract his assignee is in no better position. *Rose* v. *Swann,* 56 Ill. 37.

A bill for specific performance of a contract is addressed to the sound legal discretion of the court, and relief will not be granted as matter of course. *Frisby* v. *Ballance,* 4 Scam. 287; *Maltby* v. *Thews,* 171 Ill. 264; *Carroll* v. *Drury,* 170 id. 578; *Crandall* v. *Willig,* 166 id. 239; *Leonard* v. *Crane,* 147 id. 52; *McDonald* v. *Minnick,* id. 651; *Morse* v. *Seibold,* id. 318; *Sloniger* v. *Sloniger,* 161 id. 278; *Dintleman* v. *Gilbert,* 140 id. 597; *Harrison* v. *Polar Star Lodge,* 116 id. 286; *Railroad Co.* v. *Reno,* 113 id. 43; *Fish* v. *Leser,* 69 id. 395.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

*First*—We do not deem it necessary to enter into any detailed discussion of the terms of the contract, made between McIntosh and Packer. They appear to have been associated together in the ownership of the premises in question, and in the erection thereon of an apartment building or building of flats, known as the "Alexandra" flats. After the contract for the sale of the premises by McIntosh to Packer was entered into, and, on May 23, 1890, Dowdle & McWhirter, a firm composed of John

Dowdle and James McWhirter, filed a mechanic's lien no-
tice in the office of the clerk of the circuit court of Cook
county for $4601.07, claimed to be due to them, as stone
contractors.   Dowdle & McWhirter had furnished the
stone, used in the erection of the building upon the prem-
ises.   The mechanic's lien, notice of which was thus filed
on May 23, 1890, was not minuted upon the abstract of
title, which had been furnished to Packer's attorney, but
had come to his knowledge before his examination of the
abstract was finished, and, in his opinion in regard to the
title, he referred to this lien as an existing encumbrance
upon the property, and made it the basis of an objection
to the title.

The proof tends to show, that the building upon the
premises was completed in April or May, 1889, and that,
on September 17, 1889, a settlement had been had between
McIntosh on the one side, and Dowdle & McWhirter on
the other, by the terms of which Dowdle & McWhirter
waived their right to a lien upon the building, and ac-
cepted a note in payment of the balance due them.   On
May 26, 1890, when the deed was tendered by McIntosh
to Packer, a written waiver of lien, signed by Dowdle
& McWhirter on September 17, 1889, and other papers,
tending to show that nothing was due to Dowdle & Mc-
Whirter, were exhibited and tendered by McIntosh to
Packer.   We stop not to consider, whether or not, by
the terms of the contract of sale between McIntosh and
Packer, McIntosh was bound to furnish an abstract, show-
ing upon its face a release of this alleged mechanic's lien.
Such consideration is unnecessary in view of what is
stated hereafter.

We are satisfied from the evidence, that this notice of
a mechanic's lien was filed by Dowdle & McWhirter at
the instigation of Packer himself.   The name of the build-
ing of flats, "Alexandra," had not been carved, as was
originally intended, over the entrance thereto.   On May
8, 1890, the very day on which the contract of sale was

signed, Packer induced McIntosh to sign a written order to Dowdle & McWhirter, directing them to carve the letters, "*Alexandra*," over the entrance to the building. This written order stated, that Dowdle & McWhirter had agreed to put on these letters, but had failed to do so, and that they had been settled with and paid therefor already. The theory, upon which the mechanic's lien notice was filed, appears to have been that, by the cutting of these letters, which took place between May 8 and May 23, 1890, the performance of the contract for the stone work would be extended up to the latter date. Packer was present with Dowdle & McWhirter during a part of the time when they were carving these letters in the stone. Admissions made by Packer, and other circumstances developed by the testimony, prove that the whole transaction in regard to the filing of the mechanic's lien was brought about by Packer for the purpose of putting a cloud upon the title, so as to embarrass McIntosh in carrying out the sale of the property.

In view of the manner, in which the lien was thus put upon the property, Packer was not, of course, warranted in urging the presence of such lien upon the records as an objection to the title. For the same reason, he can not come into a court of equity to ask for a specific performance of the contract of sale. The contract, made on May 6 or May 8, 1890, was assigned to the plaintiff in error on April 30, 1891. If Packer, the purchaser, is not entitled to a specific performance of the contract, the plaintiff in error, his assignee, is in no better position. (*Rose* v. *Swann*, 56 Ill. 37). The present bill for specific performance was not filed by the plaintiff in error until May 27, 1892, more than a year after the contract was assigned to her. Where an objection to a title is urged in bad faith, neither the purchaser, nor his assignee, can be excused for the delay occasioned in the performance of the contract. (*Hoyt* v. *Tuxbury*, 70 Ill. 331). The conclusion is irresistible that, at the time Packer urged his

objection to the title, based upon the existence of this lien, he knew of its real character. A bill for the specific performance of a contract is addressed to the sound legal discretion of the court, and relief will not be granted as a matter of course. (*Maltby* v. *Thews*, 171 Ill. 264). To entitle a party to relief in a court of equity, he must come with clean hands, and with a cause that appeals to equity for relief. (*Tamm* v. *Lavalle*, 92 Ill. 263).

We are of the opinion, for the reasons above stated, that plaintiff in error was not entitled to a specific performance of the contract. To allow her to have it would be to allow her to take advantage of her own wrong, or of that of her assignor.

*Second*—It is urged, however, by the plaintiff in error that, even if the specific performance of the contract be not granted, yet that she should have a decree for the amount of the earnest money, to-wit, the sum of $3000.00, and interest thereon, as compensation, and that the decree for such amount should be made a lien upon the premises. This contention cannot be sustained under the facts of this case, but plaintiff in error must be left to her remedy at law, if she has any. We express no opinion upon the question, whether or not McIntosh had a right to rescind and forfeit the contract, and retain the earnest money. We simply hold that, in this proceeding, the plaintiff in error is not entitled to a decree for the amount of the earnest money, which shall be a lien upon the property, for the reasons hereinafter stated. On July 23, 1890, after Packer had refused to carry out the contract, and after McIntosh had tendered a deed of the premises and served notice of forfeiture, McIntosh sold the premises to the defendant in error, Francis O. Matthiessen, for the sum of $70,000.00, and executed to him a deed therefor, which was recorded on the day of its date. Counsel for plaintiff in error make no claim in their brief, that Matthiessen did not purchase the property in good faith and for a valuable consideration. They

claim, however, that Matthiessen had notice, or, under the law, was chargeable with notice of the contract made between McIntosh and Packer, and that, therefore, he holds the property subject to the same equities in favor of Packer or his assignee, as would exist in case the title still remained in McIntosh. This certainly would not be so, if Matthiessen had no notice, or is not chargeable with notice, of the contract between McIntosh and Packer.

The allegations of the bill, and the testimony in the case, show that the plaintiff in error knew, before she filed the present bill, that McIntosh, the vendor in the contract, had parted with the title to the land. The rule is, that, where the vendor's incapacity to perform the contract, though caused by his own act, as by his conveyance to a *bona fide* purchaser, is known to the complainant or vendee at the time of bringing suit, the bill will not be retained for the assessment of damages, but will be dismissed, leaving the complainant to his or her legal remedy for the recovery of said damages. (*Saur* v. *Ferris*, 145 Ill. 115; *Doan* v. *Mauzey*, 33 id. 227; *Stickney* v. *Goudy*, 132 id. 213; *Hurlbut* v. *Kantzler*, 112 id. 482; *Sellers* v. *Greer*, 172 id. 549). Of course, the rule that a bill for specific performance will not be retained to assess damages for a failure to perform the contract where the complainant knew, when he filed the bill, that the vendor had parted with the title to the property, is subject to the condition, that the vendor has parted with the title to a *bona fide* purchaser, that is, to a purchaser without notice of the equities of the party filing the bill.

It is claimed by the plaintiff in error, that Matthiessen had notice, because, before his purchase, Packer had put on record an unsigned copy of the contract between himself and McIntosh. The recording of such unsigned copy could not operate as notice to Matthiessen, for the reason that it was not such an instrument as was entitled to be recorded. The record of an instrument, not entitled by law to be recorded, is of no avail as notice. (*St. John*

v. *Conger*, 40 Ill. 535). The mere copy of a contract is not entitled to be recorded, as it has no legal authority, and is not an instrument of which the law can take any notice. The original alone is entitled to be recorded. (*Lane* v. *Lesser*, 135 Ill. 567; *Mullanphy Savings Bank* v. *Schott*, id. 655). Surely, if the copy of an executed contract does not operate as notice when recorded, the copy of an unsigned contract cannot operate as such notice.

It is claimed, however, that Packer had such possession of the premises, as operated as notice to Matthiessen. The proof does not sustain this contention. Packer owned some hardware, which was stored in the cellar under the sidewalk in front of the building, but there was nothing to indicate to Matthiessen that this hardware belonged to Packer, nor did it constitute such possession as would operate as notice. Tenants, who occupied the building, were tenants of McIntosh, and the janitor, who had control of the building, was an employe of McIntosh. After an examination of the evidence, we are satisfied that all the *indicia* of possession pointed to McIntosh, and not to Packer, as the owner of the property.

It is said, however, that Eugene E. Prussing was the agent of Matthiessen in the purchase of the property, and that, inasmuch as Prussing had been the attorney of McIntosh, and had notice of the contract between McIntosh and Packer, and of the rights of Packer thereunder, Matthiessen was chargeable with notice through the notice thus possessed by his agent or attorney. It must be remembered that Prussing was an attorney at law, and whatever notice he acquired while acting for McIntosh, he acquired as the latter's attorney. The rule, that, if the agent, at the time of the purchase has knowledge of any prior lien or contract or equity affecting the property, his principal is chargeable with such knowledge, is subject to the qualifications, that the knowledge of the agent is present to his mind at the time of making the purchase for his principal, and that the agent is at

liberty to communicate his knowledge to his principal, and that it is his duty to do so. (*Williams* v. *Tatnall,* 29 Ill. 553; *Snyder* v. *Partridge,* 138 id. 173; *The Distilled Spirits,* 11 Wall. 356; *Burton* v. *Perry,* 146 Ill. 71). When the knowledge of the agent has been acquired confidentially as attorney for a former client in a prior transaction, the reason of the rule, that the principal is bound by the knowledge of his agent, ceases. In such case, the agent cannot be expected to do that which would involve a breach of professional confidence, and his principal ought not to be bound by his agent's secret and confidential information. (*The Distilled Spirits, supra*). In the present case, Matthiessen would not be affected by the notice of his agent, which the latter acquired confidentially as the attorney for McIntosh. We are, therefore, of the opinion that Matthiessen cannot be chargeable with such notice, as Prussing had, under the circumstances shown by this record.

It must be held, therefore, that Matthiessen was a *bona fide* purchaser of the property without legal notice of any rights on the part of Packer, or his assignee. This being so, the present bill cannot be retained for the purpose of entering a decree for compensation, which shall be a lien on the property.

We find no substantial error in the record, and accordingly the decree of the superior court is affirmed.

*Decree affirmed.*