## AMERICAN INVESTMENT CO. et al. v. GOODSON.

No. 11820—Opinion Filed Oct. 23, 1923.

Rehearing Denied Dec. 18, 1923.

Second Rehearing Denied Jan. 27, 1925.

1. **Principal and Agent — Knowledge of Loan Agent Imputed to Principal.**

When A. furnishes blank applications for loans to R. and solicits R. to solicit prospective borrowers and pays R. a commission on such loans made, and closes the loan through R. by sending him the check representing the money borrowed, R. is thereby constituted the agent of A., and any knowledge coming to R. through the particular transaction is imputed to A., and he is charged therewith.

2. **Same — Fraudulent Sale of Ward's Lands.**

Where a guardian solicits the agent of a loan company to make a loan to Y. on the ward's land, and discloses to the agent a fraudulent scheme whereby the ward's lands may be sold to Y. and mortgaged to the agent's principal, and Y. makes application for the loan, the fact that the agent is an attorney and assists in obtaining an order from the probate court for the sale of such lands, does not establish the relation of attorney and client between the agent and Y. and all information obtained by the agent in the particular transaction is imputed to the agent's principal.

3. **Same — Action by Ward to Cancel Mortgage - Return of Proceeds Paid to Third Party.**

Where a ward's lands are sold under a fictitious or pretended sale, and mortgaged by the pseudo purchaser with knowledge on the part of an agent obtained in the particular transaction under such circumstances as imputes knowledge to the principal, the ward, in an action to vacate the mortgage and cancel the notes, will not be required to tender back any money received by a third party through such fraudulent sale and mortgage, unless it be conclusively proven by competent testimony that the ward, at the time of attaining his majority, had such money or a portion thereof in his possession.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Grady County; Frank Matthews, Assigned Judge.

Action by John J. Goodson, Jr., against the American Investment Company, National Life Insurance Company, and R. L. Duke. From the judgment both the In-

vestment Company and plaintiff bring error. Reversed in part and remanded, with instructions.

Rainey & Flynn, H. E. Oakes, and Calvin Jones, for plaintiff in error.

E. E. Glasco and Roy Glasco, for defendant in error.

Opinion by RUTH, C. For convenience, the defendant in error, John J. Goodson, Jr., will be designated as plaintiff, and plaintiff in error, American Investment Company, will be designated as the defendant.

This was an action wherein the plaintiff filed his petition, setting forth that he was a Choctaw Indian of the one-eighth blood, and that he resided in Garvin county, and was allotted certain lands as his share of the Choctaw and Chickasaw Nations in Garvin county containing about 230 acres, that this allotment was made about 1903, and on the 11th day of July, 1912, a certain J. M. Yoder executed and delivered to the defendant investment company a mortgage on the said land in the sum of $3,500, with interest at the rate of six per cent., and on the same date the said J. M. Yoder executed and delivered to the defendant R. L. Duke his three certain promissory notes of $234, $233, and $233, respectively, aggregating $700, secured by a certain second mortgage on said lands, and the same were duly recorded, and defendant American Investment Company, was the owner of the notes and mortgages, and it assigned the same to the National Life Insurance Company. Plaintiff further sets up that Yoder claimed title to the land by reason of a certain guardian's deed executed to him on June 25, 1912, by Nettie Leach, as guardian of the plaintiff, and that Nettie Leach and Yoder fraudulently and unlawfully conspired together to make a pretended sale of the said lands for the purpose of mortgaging them to the defendant investment company, and that the investment company knew that said conspiracy existed and consented thereto, that Yoder did not purchase the lands from the guardian, and did not pay any consideration therefor, and did not enter into possession of said lands, and that Nettie Leach, guardian, and Yoder falsely represented to the county court of Garvin county that Yoder had purchased the lands for the sum of $8,050, and that said county court was induced by said fraudulent representation to render a decree of confirmation of the sale of the said lands. Plaintiff further avers that he never received any portion of the consideration paid for said lands and asks that the order confirming the sale, also the deed and the mortgages for $3,500 and $700 be set aside, and that plaintiff's title be forever quieted in the land.

Upon it being shown that the insurance company had reassigned the mortgages to the American Investment Company, and the defendant, R. L. Duke, who was simply a stenographer in the office of the American Investment Company, assigned the $700 mortgage to the defendant company, which company took it as a commission mortgage, and the stenographer acted only as a dummy to disguise the real transaction, and the defendant investment company was actually charging the borrower 20 per cent. of the sum total of the amount borrowed as a commission in addition to the legal rate of interest on the loan, the issues narrowed down between the plaintiff Goodson and the defendant American Investment Company, which company in its answer denied there was any fraud or collusion and asks that its mortgage be established as a valid lien and prior to the claim of the plaintiff, and, for cross-petition, it asks for foreclosure of its mortgage of $3,500, with interest, and $350 attorney fee, and asks for foreclosure on the second mortgage on which there remains due and unpaid $233, and that it be given judgment against J. M. Yoder and Madie Yoder, his wife, who were made parties defendant by their cross-petition, and upon answer being filed by defendants Yoder, judgment was rendered against them in favor of the American Investment Company, and the cause proceeded to trial before Honorable Frank Matthews, Judge.

Upon hearing had, the court made certain findings of fact and conclusions of law, to some of which exceptions were taken by both plaintiff and defendant. The court below found that the plaintiff Goodson was allotted the land in question, and that he became of age in January, 1916, and that his mother, Nettie Leach, was appointed his guardian and entered into an agreement with Yoder, who was a brother of Nettie Leach, to make a fictitious sale of the land through the county court, representing that Yoder had paid $8,050 for it, so they might negotiate a loan on the land, and that Yoder would execute the mortgages to the American Investment Company and the woman stenographer, R. L. Duke, and the Investment company paid Yoder the money, with the exception of a small amount for abstracts, etc. The court further found

as a matter of fact that one Albert Rennie was an attorney at Pauls Valley, Oklahoma, and represented Nettie Leach as her attorney, and that Rennie was at all times fully cognizant of all the proceedings with regard to the conveyance of the said land and deed to the said Yoder by Nettie Leach, guardian, and knew that Yoder paid no consideration for the land, but was to procure a loan on the land and reconvey the same back to Nettie Leach. The court further found that Albert Rennie prepared and made the written application to the American Investment Company for the loan, which application was signed by Yoder, and the company requested Rennie to make some correction in the probate proceedings, and sent the checks to Rennie for the amount of the loan payable jointly to Rennie and Yoder.

The court further found that Nettie Leach dissipated $2,000 of this money in ventures of her own, and further found that none of the parties to the negotiation resulting in the conveyance of the land were guilty of any corrupt intention to defraud John J. Goodson, Jr., or any one else. From all the evidence, the court, as a conclusion of law, finds that Albert Rennie was the agent of the American Investment Company in procuring the loan for Yoder, and that the knowledge of Rennie as to the transaction resulting in the conveyance of the said lands by Nettie Leach, guardian, to J. M. Yoder, was imputed to the American Investment Company, and further finds that John J. Goodson, Jr., is entitled to have the notes and mortgages canceled and held for naught, with the exception that the American Investment Company is entitled to a repayment of $1,486 and interest as a condition precedent to the cancellation of the said mortgages, and finds that the American Investment Company is entitled to judgment against J. M. Yoder for the full amount shown to be due on the notes. Both plaintiff and defendant filed their motion for new trial and upon same being overruled, this cause comes on to this court for review.

The first assignment of error presented by the investment company is:

"That Albert Rennie, who was attorney for the guardian, Mrs. Leach, in conducting the guardianship sale proceedings and advised her as to the method of carrying out the plan to borrow this money, and procured the sale, was in such position that he would not and could not, on account of his confidential relations to Mrs. Leach, notify the American Investment Company of any circumstances surrounding this sale, as it would have been a breach of his professional confidence, and that therefore any knowledge which the said Albert Rennie had as to this title could not be imputed to the American Investment company."

In the reply brief, they take the position that Rennie was not their agent, and we will take up this stage of the case first, as, in our opinion, it may be easily disposed of.

One W. B. Paschal appears to have been the president of the American Investment Company. The testimony shows, without the slightest contradiction on either side, that the company had sent at some time to the attorney, Rennie, their blank application forms for securing loans, and solicited Rennie to secure loans for them, and that Rennie sent in the application of Yoder, that the loan was finally passed and all checks drawn by the company to the borrower were drawn in the name of Rennie and Yoder, jointly, and sent by the company to Rennie, and the company paid Rennie a commission for securing the loan, and while this is all admitted by the president, W. B. Paschal, he still insists that Rennie was not an agent, but as defendant assigns but two propositions, neither of which embraces the question of the agency, the question of Rennie's agency is not before this court for consideration.

In support of their assignment of error that knowledge of Rennie as to the fraudulent conveyance could not be imputed to the American Investment Company, they cite from several opinions by this court, and the first opinion cited is the case of First State Bank of Keota v. Bridges, 39 Okla. 355, 135 Pac. 378, and while the brief excerpt from the syllabus in this case would appear, in some degree, to support the defendant's contention, an examination of the case discloses that it is wholly against the contention of the defendant, for in that case, this court held:

"Notice to an agent, who with their knowledge and consent represents both parties to a transaction, is notice to either of them to whom it would be notice if the agent represented him alone, and if each would be charged the notice to the agent is notice to both"

—and in paragraph 4 of the syllabus, the court says:

"Notice or knowledge acquired by an agent prior to his agency, which he has in mind or acquired so recently as to warrant the assumption that he still retains it, will

be imputed to his principal if otherwise imputable."

We find, on examination of the record, the attorney, Rennie, had represented Nettie Leach, and that other attorneys had represented her at various times, but the record nowhere shows that he was her attorney when she was first appointed guardian, but if this was a fact, the scheme to make this fictitious sale and secure the loan does not appear to have been hatched until July, 1912, and so far as her employing Rennie as an attorney, the evidence discloses that Mrs. Leach visited Rennie, and the following conversation was had, according to the evidence as set forth in this record:

"That she went to Mr. Rennie and said she wanted to borrow some money on the land; that she did not want to sell the land, but wanted to get it over in her brother's name and he would deed it back, and Mr. Rennie said, 'How do you know you can do that?' and she said that she noticed several other people doing it, and Rennie said 'yes'; and she said, 'I thought I would come and see you and ask you;' and that Rennie told her he was the agent of the American Investment Company, and that we just agreed to put the sale through and he said, 'I will do that.' I said, 'I will go and see someone;' and he said, 'I am agent myself, I can put the sale through for you;' and I said 'all right,' and he went to work, and I went to my brother and he came to this court with me here"

—and out of this conversation, the transaction grew, the fictitious sale was made, and the money was loaned.

In applying the principle enunciated in the case of the Bank of Keota v. Bridges, supra, to the instant case, we find that Rennie was agent for the company which placed the loan, and also acting for the guardian in effecting the fictitious sale of her ward's property; that it must have been plainly evident to the president, W. B. Paschal, who testified that he passed on all abstracts, that Rennie was acting in a dual capacity, both as agent for the company and as attorney for the guardian, and he cannot be heard to say that the agent's relation to the guardian was such as to overcome the presumption of notice by the agent.

In the case of United States Fidelity & Guaranty Company v. Shirk, 20 Okla. 576, 95 Pac. 218, it is held:

"The law imputes to the principal, and charges him with all notice or knowledge relating to the subject-matter of the agency which the agent acquires or obtains while acting as such agent and within the scope of his authority, or which he may previ-

ously have acquired, and which he then had in mind, or which he has acquired so recently as to reasonably warrant the assumption that he still retained it, provided however, that such notice or knowledge will not be imputed, (1) where it is such as it is the agent's duty not to disclose; and (2) where the agent's relations to the subject-matter or his previous conduct renders it certain that he will not disclose it; and (3) where the person claiming the benefit of the notice or those whom he represents colluded with the agent to cheat or defraud the principal."

Counsel cites also from Mack v. McIntosh, 181 Ill. 644, 54 N. E. 1019, and lays particular stress upon that opinion, and we find the court holding in that case:

"When the knowledge of the agent has been acquired confidentially as attorney for a former client in a prior transaction, the reason of the rule, that the principal is bound by the knowledge of his agent, ceases"

—but in the case at bar, there is no evidence that any knowledge of a proposed fictitious sale was possessed by Rennie in any prior transaction or in any confidential manner. The fictitious sale was not conceived until the guardian visited Rennie, and from her evidence, nothing was said with regards to employing him as attorney any more than he said he was agent for the company and could put the sale through and could put the loan through.

The case of Vose v. Penny, 78 Okla. 238, 190 Pac. 97, cited in brief of defendant, is not applicable to this case and is clearly distinguishable therefrom, for in the case cited there was no question of any of the parties acting as agents or attorney for both of the parties, and for that reason the opinion in Vose v. Penny is not even persuasive upon this court.

In Berry v. Tolleson, 68 Okla. 159, 172 Pac. 630, the only question raised was whether or not the ward's property was sold for cash instead of transfer of lands and the question of dual agency is not involved.

In the case of Collins Investment Co. v. Waide, 70 Okla. 191, 173 Pac. 835, cited by plaintiff in error, O. W. Jones was never, during the negotiations of said loan, an agent of the F. B. Collins Company, and it is therefore clearly distinguishable from the case now under consideration.

The case of Mack v. McIntosh et al., 181 Ill. 644, 54 N. E. 1019, relied upon by plaintiff in error, is not applicable when taken in connection with the facts of the instant case, for in the Mack v. McIntosh Case the court said:

"When knowledge of the agent has been acquired confidentially as attorney for a former client in a prior transaction the reason of the rule, that the principal is bound by the knowledge of his agent, cases."

This is clearly distinguishable from the case now being considered by this court, for the reason that the information acquired by Rennie as agent for the American Investment Company was acquired at the time of making of the application for the loan and not in his capacity as attorney for the guardian.

In the cases of Harrington v. United States, and Boyden v. United States, 78 U. S. 356, from which opinion by Justice Bradley, the defendant quotes extensively, we cannot find the rule applies, as, in fact, Justice Bradley, in paragraph 5 of the syllabus, goes much further than the decisions heretofore quoted with respect to knowledge acquired by an attorney in a prior transaction, and says:

"The rule that notice to the agent is notice to the principal applies not only to knowledge acquired by the agent in the particular transaction, but to knowledge acquired by him in a prior transaction, and present to his mind at the time he is acting as such agent; provided, it be of such a character as he may communicate to his principal, without breach of professional confidence"

—and the learned Justice in discussing these consolidated cases quotes Lord Hardwicke, in Warrick v. Warrick, 3 Atk. 294, being one of the cases mentioned in brief of plaintiff in error, but Justice Bradley does not adopt the language of Lord Hardwicke, but uses the language and opinion of Lord Eldon, who did not approve of it.

In Mountford v. Scott, 1 Turn. & R. 274, Lord Eldon is quoted as saying:

"I should be unwilling to go so far as to say that if an attorney has knowledge of a transaction in the morning, he shall be held in a court of equity to have forgotten it in the evening; it must in all cases depend upon the circumstances."

Justice Bradley, continuing, says:

"The distinction taken by Lord Hardwicke has since been entirely overruled by the Court of Exchequer Chamber in the case of Dresser v. Norwood, 17 Com. B., N. S. 466. So that in England the doctrine now seems to be established that if the agent at the time of effecting a purchase, has knowledge of any prior lien, trust or fraud, affecting the property, no matter when he acquired such knowledge, his principal is affected thereby."

The rule laid down in 40 Cyc. 2373, relating to privileged communications, is as follows:

"The rule does not extend to communications respecting proposed infractions of the law, and so there is no privilege as to communications made in contemplation of the future commission of a crime, or perpetration of a fraud in which, or in avoiding the consequences of which, the client asks the advice or assistance of the attorney. But communications made in respect to an alleged crime or fraud made after the act or transaction is finished are privileged." See State v. Richards (Wash.) 167 Pac. 47; Chicago Lmbr. Co. v. Cox (Kan.) 147 Pac. 67; Ex parte McDonaugh (Cal.) 149 Pac. 566.

In Hartness v. Brown, 59 Pac. 491, the Supreme Court of Washington says:

"The rule, however, is well settled that communications made to counsel in contemplation of fraud or a criminal act are not privileged."

We have examined all the authorities cited in the brief of the plaintiff in error with consummate care, and we can find no authority sustaining the defendant's position when leveled with the facts in this case. The knowledge of Rennie was acquired, not in a prior transaction in which he acted as attorney for the guardian, but was acquired in the particular transaction in which he was not consulted as an attorney, but as agent of the defendant, and considering this in connection with the fact that the loan was made to Yoder, who never employed Rennie as an attorney, and that the defendant charged Yoder $700 commission, or 20 per cent. of the total amount borrowed, and that this mortgage was made to a stenographer in the office of defendant, and immediately assigned to the company, and that all notices of the due date of interest and principal were forwarded by the defendant to the guardian and not to the borrower, and all interest on the $3,500 mortgage and the two notes representing two-thirds of the principal on the commission mortgage were paid by the guardian, and usually paid with her check, we cannot say the defendant had no knowledge of the actual facts, and certainly the evidence is such as to impute the knowledge of Rennie to the defendant by which they are bound, and we can find no error in the court below so holding.

The second and last proposition presented in defendant's brief relates to the rule requiring full faith and credit to be given the judgment of the county court in confirming the guardian's sales and the profection of innocent purchasers, and cites cases. This is a salutary rule and very necessary for

the protection of innocent purchasers, and any other rule would result in great hardships, and would make it impossible to realize anything approximating a fair price for land, at the guardian's sale, but having held that the defendant was not an innocent purchaser, the rule does not apply.

The only question, therefore, left for this court to consider is the cross-assignment of error of the plaintiff, who excepts to the finding of the court, that the guardian dissipated $2,000 in ventures of her own, and spent $1,486 for the benefit of the ward, and rendering judgment for the defendant for $1,486 with interest and decreeing said sum to be a first mortgage lien upon the lands of the plaintiff, which sum with interest now approximates $2,500.

The plaintiff testified that he never received any part of the money obtained from the defendant, and the guardian's report, sworn to on October 11, 1912, being less than two months after the loan was secured, shows that all the money so received by Yoder, or the guardian, was expended prior to the last mentioned date, and three and one-half years before the minor attained his majority.

The mortgages herein complained of, if not void, were at least voidable by reason of the fraud practiced upon the minor, knowledge of which fraud is imputed to the defendant by reason of the agency of Rennie, and the plaintiff having used due diligence in filing this action within one year after attaining his majority wherein he seeks to have the mortgage canceled, this assignment of error is brought within the rule laid down by this court in a long line of opinions.

In Bridges v. Rea, 64 Okla. 116, 166 Pac. 416, wherein lands were sold during minority through the probate court, and it developed that it was not a sale but an exchange of lands, this court said:

"Having been procured by fraud on the court, this deed was void"

—and with reference to returning the proceeds of the sale, the court said:

"Assuming that plaintiff had no right to sue to rescind the sale without restoring the consideration, her offer so to do in her petition, wherein she tenders back to the said defendant, W. C. Rea, the drug stock taken in exchange by her guardian for her lands was all that the law required of her. But the deed being void, she was not required to return the consideration as a condition precedent to relief in equity; but, aside from this, in the absence of a showing

that, at the time she brought the suit or the case was tried, she had in her possession any of the consideration received for the land was sufficient reason for not requiring her so to do."

In Stevens v. Elliott et al., 30 Okla. 41, 118 Pac. 407, this court said:

"From the conclusions reached the deeds of March 9, 1905, should be canceled and set aside. But should this be done without imposing terms upon the plaintiff? We think not, providing that it should hereafter appear that she on the date when she arrived at her majority had in her possession or under her control the money, or any part thereof, received by her from Vaughn, or any property received in exchange therefor, such money or property as she had on said date she should account for. If, however, she had spent or disposed of the money so received or its proceeds, then the relief accorded by the court below should not be denied her. This is the settled rule of the courts in almost all jurisdictions. 22 Cyc. 615, and cases cited: Colbert v. Alfrey, 168 Fed. 231, 93 C. C. A. 517; Rae more v. Johnson, 24 Okla. 544, 103 Pac. 554."

After a careful examination of all the evidence, we cannot agree with the findings of the court "that none of the parties to the negotiations * * * were guilty of any 'corrupt' intention to defraud any one." The adjective "corrupt" might well have been omitted from the finding, for if there was an "intent to defraud," the intent, of itself, shows the corruption, and the agent of the defendant investment company having knowledge of the facts, acquired in the particular transaction, and at the time of taking the application for the loan, and this knowledge being imputed to his principal a fraud was prepetrated upon the court, and the plaintiff, and for the reasons herein stated the judgment of the court below should be reversed, in so far as it imposes upon the plaintiff, as a condition precedent to the cancellation of the mortgages, that he repay the defendant the sum of $1,486 with interest at the rate of six per cent. per annum from the 11th day of July, 1912, and the cause should be remanded to the district court of Garvin county, with instructions to enter judgment for the plaintiff, John J. Goodson, Jr., canceling the notes and mortgages executed by Yoder on the lands of the plaintiff in favor of the American Investment Company, and the mortgage executed by Yoder on plaintiff's lands in favor of R. L. Duke and quieting title to the said lands in the plaintiff as against the defendant.

By the Court: It is so ordered.